UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-505-RJC-DLH

| | |
|---|---|
| CHARLES EVERETTE HINTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| MICHAEL W. HENDERSON; ) | |
| TERESA BROADWAY; and ANDREW ) | |
| RUDGERS, Probation Officer, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendant Michael Henderson's ("Henderson") Motion for Summary Judgment, (Doc. No. 32), and Plaintiff Charles Everette Hinton's ("Hinton") Motion for Default Judgment and Objection to the Magistrate Judge's Grant of Defendant Teresa Broadway's ("Broadway") Motion for Extension of Time to Answer, (Doc. No. 15).

## I. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. Id. at 325-26.

The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## II. BACKGROUND

On August 1, 2000, Hinton was convicted of taking indecent liberties with a child. See (Doc. No. 1-2 at 1). North Carolina law requires such individuals to register their home address with their local sheriff's office. See N.C. GEN. STAT. §§ 14-208.6, 14-208.7. They must also register any change of address. See N.C. GEN. STAT. §§ 14-208.9(a). Henderson is a deputy sheriff with the Mecklenburg County Sheriff's Office. (Docs. No. 1. at 1; 32-2 at 2). He was stationed in the Gun Permit/Sex Offender Unit in December 2008. (Doc. No. 32-2 at 2).

On November 7, 2008, Hinton notified the Mecklenburg County Sheriff's Office that he was moving to the Uptown Men's Shelter located at 1210 North Tryon Street, Charlotte, North Carolina. (Doc. No. 32-2 at 3). Henderson went to the Uptown Men's Shelter to verify Hinton's address on December 18, 2008. (Id.). Henderson met with the shelter director, Carson Dean, whom Henderson had previously met. (Id.). Dean informed Henderson that Hinton had not

2

been there since December 4, 2008, and that his whereabouts were unknown. (Id.).

Henderson returned to the Sheriff's Office and checked to see if Hinton had filed another change of address form. (Id.). When he did not find one, he went to the Mecklenburg County District Attorney's Office to consult an assistant district attorney about whether to seek an arrest warrant. (Id. at 3-4). An assistant district attorney agreed that Henderson had probable cause to arrest Hinton for a failure to notify the Sheriff's Office of a change of address. (Id.). Henderson then applied to a magistrate judge for an arrest warrant. (Id.). The magistrate issued the warrant and Henderson deposited it in the repository to be executed by other officers. (Id.). Hinton was arrested on December 31, 2008.

## III. ANALYSIS

### A. Summary Judgment

Hinton claims that Henderson "made a false complaint resulting in [his] arrest which later was dismissed." (Doc. No. 1 at 2). In Hinton's form complaint, he checked boxes indicating that he was alleging that Henderson was, and was not, acting under the authority or color of state law. (Doc. No. 1 at 2). The Court construes this to mean that Hinton is suing Henderson in both his official and individual capacities. See (Doc. No. 30); Estelle v. Gamble, 429 U.S. 97, 106 (1976) (Pro se pleadings must be "liberally construed").

#### 1. Official Capacity

"A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Section 1983 allows suits against any "person" who violates a citizen's constitutional rights under color of state law. 42 U.S.C. § 1983. But a State is not a "person" within the meaning of Section 1983, and cannot be sued under Section 1983. Will, 491 U.S. at

65. A local government, though, is such a person and may be sued under Section 1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978). Therefore, Henderson's amenability to suit under Section 1983 depends upon whether he works for a state or local office. In <u>Harter v. Vernon</u>, the Fourth Circuit held that a North Carolina Sheriff was a local official and not entitled to Eleventh Amendment immunity. 101 F.3d 334, 343 (4th Cir. 1996); <u>see also</u> <u>Cash v. Granville Cnty. Board of Educ.</u>, 242 F.3d 219, 223 (4th Cir. 2001) (re-affirming <u>Harter</u>); <u>Gantt v. Whitaker</u>, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (holding that North Carolina sheriffs are local officials). Henderson's office is a "person" who can be sued under Section 1983.

Local governments, however, "cannot be held liable under § 1983 on a respondeat superior theory." <u>Monell</u>, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694. Hinton has not alleged that any policy, custom, or act of a final policymaker caused him injury. Therefore, Hinton's official capacity claim must be dismissed.

2. Individual Capacity

Executive officials sued in their individual capacities are entitled to qualified immunity. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 813 (1982). Henderson argues that qualified immunity shields him from Hinton's suit. (Doc. Nos. 6 at 3; 32 at 13-14). "Qualified immunity protects government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Davis v. Prince George's Cnty.</u>, 348 F. App'x 842, 843-44 (4th Cir. 2009) (quoting <u>Harlow</u>, 457 U.S. at 818). Henderson bears the burden of proof to prove his entitlement to qualified immunity. <u>Hunter v. Bryant</u>, 502 U.S. 224, 233 (1991).

4

Hinton admits that Henderson was performing his discretionary function as a deputy sheriff when he engaged in the alleged unconstitutional acts. (Doc. No. 1 at 2). The Court must then determine whether: (1) "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right;" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009) (making the above sequence optional "in light of the circumstances in the particular case at hand").

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." U.S. CONST. amend. IV. "[A]n officer whose request for a warrant allegedly caused an unconstitutional arrest . . .[only loses qualified immunity's protection] where the warrant application is so lacking in indicia of probable case as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 345 (1986). The Fourth Circuit has elaborated that "the question is not whether there actually was probable cause for the [] warrant against [Hinton], but whether an objective law officer could reasonably have believed probable cause to exist." Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002). As to false statements, the Fourth Circuit has held that:

> [t]o succeed on his claim, Plaintiff must prove that [Henderson] deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.' 'Reckless disregard' can be established by evidence that an officer acted with a high degree of awareness of a statement's probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. . . . With respect to omissions, "reckless disregard" can be established

5

> by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause. . . . A plaintiff's allegations of negligence or innocent mistake by a police officer will *not* provide a basis for a constitutional violation.

Miller v. Prince George's Cnty., 475 F.3d 621, 627-28 (4th Cir. 2007) (internal citation and quotations omitted).

Hinton claims that Henderson falsely asserted in his warrant application that Hinton had previously been convicted of violating Article 27A of Chapter 14, the North Carolina law governing sex offender registration. (Doc. No. 34 at 3). Henderson appears to admit making the statement, but argues that "[a] violation of Article 27A of Chapter 14 is required in order for an individual to be required to register . . ." Henderson may have ineloquently attempted to testify that Hinton had previously been convicted of a crime that Article 27A of Chapter 14 defines as a reportable conviction, thereby supporting his allegation that Hinton was required to report any address change. See N.C. GEN. STAT. §§ 14-208.7. The Court cannot know exactly what Henderson averred because neither party has filed his actual warrant application.

But Henderson may only be found liable for <u>material</u> false statements and omissions of facts that would negate probable cause. Miller, 475 F.3d at 627. Even accepting Hinton's claim as true, Henderson is not liable. A suspect's past violation of North Carolina's sex offender registry laws has no bearing on a probable cause determination for a present violation. See N.C. GEN. STAT. § 14-208.11(a)(2). North Carolina General Statutes Section 14-208.11 provides that "[a] person required by this Article to register who willfully does any of the following is guilty of a Class F felony: . . . (2) Fails to notify the last registering sheriff of a change of address as required by this Article." A person may be constitutionally arrested for such a violation where probable cause exists that he is required to register, but willfully fails to notify the last

registering sheriff of a change of address.  Id.; Herring v. United States, 555 U.S. 135, 136 (2009) (holding that generally police must have probable cause or a warrant before making an arrest).  Regardless of whether there was actual probable cause, Henderson is entitled to qualified immunity if an "objective law officer could reasonably have believed probable cause to exist."  Gomez, 296 F.3d at 261.

Hinton admits that he has been convicted of taking indecent liberties with a child.  (Doc. No. 1-2 at 1).  Such an offense qualifies as a "sexually violent offense" under N.C. GEN. STAT. § 14-208.6(5).  North Carolina law requires anyone convicted of a sexually violent offense to register as a sex offender and update the sheriff's office with any address changes.  See  N.C. GEN. STAT. §§ 14-208.7 (requiring any state resident with a "reportable conviction" to maintain registration with the sheriff's office); 14-208.6(4) ("Reportable conviction" includes a "sexually violent offense"); 14-208.9 (requiring change of address notices).

Hinton registered the Uptown Men's Shelter as his official address with the Mecklenburg County Sheriff's Office.  (Doc. No. 32-2 at 1).  But the director of this shelter told Henderson that Hinton did not live there.  (Id. at 3).  This alone would likely have been sufficient to arrest Hinton, but Henderson first double checked whether Hinton had submitted a new change of address form.  (Id.).  He also consulted the District Attorney's Office for an opinion and obtained a warrant.  See Gomez, 296 F.3d at 264-65 (finding that officer's conference with district attorney and procuring approval of a magistrate weigh in favor of finding that the officer acted reasonably).  An "objective law officer could reasonably have believed probable cause to exist" that Hinton was in violation of North Carolina General Statutes § 14-208.11(a)(2).  See Gomez, 296 F.3d at 261.

Hinton argues that Henderson should have come back after curfew or mailed out an

7

address verification form to make sure Hinton did not reside at the shelter. (Doc. Nos. 34 at 8-11; 39 at 11). But "[t]he fact that [Henderson] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause . . ." McKinney v. Richland Cnty., 431 F.3d 415, 418-19 (4th Cir. 2005); see also Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause."); Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir. 2000) ("The question before us is not whether he exhausted every potential avenue of investigation. Rather, for purposes of qualified immunity, we must simply determine whether [Henderson's] actions were reasonable under the circumstances. That his efforts could have been more thorough, or even that his actions may have been mistaken, does not mean that they were unreasonable."). Henderson acted reasonably in applying for an arrest warrant.

Hinton also objects to Henderson's diligence in investigating Hinton's present address. Hinton argues that North Carolina law limits the manner and frequency with which law enforcement may check a sex offender's address. (Doc. No. 34 at 8-11). Henderson counters that North Carolina law allowed him to check an offender's address twice a year and to investigate in person. (Doc. No. 36 at 2) (citing N.C. GEN. STAT. § 14-208.9A(b)). The Court does not reach this issue because Henderson's visit to the Uptown Men's Shelter did not violate Hinton's federal statutory or constitutional rights in any way. Henderson is entitled to qualified immunity and Hinton's claims against him must be dismissed.

B. Default

Hinton moved for default judgment against Broadway for her failure to timely answer his

complaint. (Doc. No. 15). The United States Marshal Service served Broadway with Hinton's complaint on November 9, 2010. (Doc. No. 8-1 at 1). Twenty-one days later, Broadway moved for an extension of time to file her answer. (Doc. No. 10). The Magistrate Judge granted this motion the next day. (Doc. No. 11). Hinton objected to that order and moved for default on December 16, 2010. (Doc. No. 15). Broadway filed her answer within the Court's new deadline, on December 30, 2010, (Doc. No. 18). Hinton has not shown that the Magistrate Judge's order was clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A) (governing appeals of magistrate judge's orders on pretrial maters). The Court will not reconsider the motion.

Federal Rule of Civil Procedure 55(c) allows a court to "'set aside an entry of default for good cause,' and courts apply the same standard in cases where a motion for default is contested before its entry." Crop Production Servs., Inc. v. Layton, No. 1:09-cv-401, 2009 WL 2843307, at *1 (M.D. Ala. Sept. 1, 2009). Here, default was never entered, but the Magistrate Judge did not give Broadway permission to file a belated answer until one day after her answer was initially due. Nonetheless, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). "When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006).

Broadway has several meritorious defenses including Eleventh Amendment and qualified

immunities, and a 12(b)(6) contention, although she has yet to file an accompanying brief. (Doc. No. 18); see also Local Rule 7.1(C). While it is generally unwise to rely on a court to grant one's motion for an extension of time, Broadway did act with reasonable promptness in requesting an extension of time within the initial answer period. (Doc. Nos. 8-1; 10). Broadway is responsible for her last minute extension request. But there does not appear to have been any prejudice to Hinton. There is no history of dilatory action on Broadway's part. There is no need for sanctions in this case. The Magistrate Judge granted Broadway an extension of time to file her answer one day after the expiration of the period the Rules prescribe for her to do so. She filed her answer thirty days later. Hinton's motion for default judgment is denied.

Broadway and Rudgers remain defendants in this case and issue has been joined. See (Doc. Nos. 18; 35). In accordance with Local Rule 16.1, the Court orders the parties to confer as provided by Federal Rule of Civil Procedure 26(f) and conduct an "Initial Attorney's Conference" within fourteen (14) days of the date this Order is entered. The Court further orders the parties to file a Certification of Initial Attorney's Conference within twenty-one (21) days of the date this Order is entered.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Henderson's Motion for Summary Judgment, (Doc. No. 32), is **GRANTED** and Hinton's claims against Henderson are **DISMISSED**;

2. Hinton's Motion for Default Judgment and Objection to the Magistrate Judge's Grant of Broadway's Motion for Extension of Time to Answer, (Doc. No. 15), are **DENIED**.

3. The parties confer as provided by Federal Rule of Civil Procedure 26(f) and

conduct an "Initial Attorney's Conference" within fourteen (14) days of the date this Order is entered.

4. The parties file a Certification of Initial Attorney's Conference within twenty-one (21) days of the date this Order is entered.

Signed: September 28, 2011

Robert J. Conrad, Jr.
Chief United States District Judge