UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-505-RJC

| CHARLES EVERETTE HINTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| MICHAEL W. HENDERSON, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Teresa Broadway and Andrew Rudgers.[1] (Doc. No. 96). Also before the Court are two Motions to Compel filed by Plaintiff, as well as a Motion for Hearing on the Motions to Compel. (Doc. Nos. 84; 86; 91).

**I.    BACKGROUND**

Pro se Plaintiff Charles Everette Hinton is an inmate in the custody of the North Carolina Department of Public Safety currently housed at Maury Correctional Institution in Maury, North Carolina.[2] (Doc. No. 97-1: Defs. Ex. A). Plaintiff is serving two, 10 to 13 year consecutive sentences after being convicted on April 25, 2012, of being a habitual felon, and on charges of breaking and entering, larceny, and sexual offense against a child. (Id.).

---

[1] In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the necessity of filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 99). On July 25, 2013, Plaintiff filed his Response. (Doc. No. 100).

[2] Plaintiff is a frequent and abusive filer in this Court. He has inundated this Court with meritless actions and motions. He has already accumulated three strikes against him under 28 U.S.C. § 1915(g). See Order, Doc. No. 9, Case No. 3:12cv367 (W.D.N.C. 2012) (noting that Plaintiff has filed 19 civil lawsuits in this Court).

On October 12, 2010, Plaintiff filed this action against Defendants Mecklenburg County Deputy Sheriff Michael W. Henderson, former Mecklenburg County District Attorney Peter S. Gilchrist III, and probation officers Teresa Broadway and John Doe. (Doc. No. 1). Plaintiff alleged that Defendants, individually or collectively, violated his unspecified constitutional rights under theories of malicious prosecution and false imprisonment by causing charges to be brought against him (alleged against Henderson) or pursued against him (alleged against Gilchrist), or by causing probation violations to be alleged against him resulting in his arrest (alleged against Broadway and Doe).[3] (Id.). On December 3, 2010, Plaintiff amended his Complaint to name Defendant Andrew Rudgers in place of Defendant John Doe. (Doc. No. 12). On November 16, 2010, Defendant Gilchrist moved for dismissal of the Complaint against him on grounds of absolute immunity as a state prosecutor, which the Court granted. (Doc. Nos. 7; 43). On February 7, 2011, Defendant Henderson moved for summary judgment, which the Court also granted. (Doc. Nos. 32; 54).

At all relevant times, Plaintiff was on probation and supervised first by Defendant Broadway and later by Defendant Rudgers. See (Doc. Nos. 1-2 at ¶¶ 10; 11: Affidavit of Charles Everette Hinton). According to the Complaint, Plaintiff was arrested on December 31, 2008, as a result of a criminal complaint brought against him by former defendant Henderson and prosecuted by former defendant Gilchrist. See (Doc. No. 1-1 at 2: Complaint; Doc. No. 1-2 at ¶¶ 3; 8).

---

[3] As Defendants note, Plaintiff does not specify in his Complaint whether he is suing Defendants in their individual capacities, their official capacities, or both, and he seeks only money damages against them. (Doc. No. 1 at 5). Plaintiff states in his Response that he sued Defendants in both capacities. (Doc. No. 100 at 4). A suit against a state official or employee in his official capacity based on § 1983 constitutes a suit against the State, which is protected from liability for money damages under the Eleventh Amendment. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Thus, Plaintiff could not recover money damages from Defendants in their official capacities even if his action could survive the summary judgment motion.

Plaintiff was eventually released from custody on April 21, 2010. (Doc. No. 1-2 at ¶ 11). He alleges that Defendants Broadway and Rudgers, as probation officers, "filed false probation violation reports that were eventually dismissed." (Doc. No. 1 at 2). Regarding Defendant Rudgers, Plaintiff more specifically alleges:

> Defendant [Rudgers] obtained an arrest warrant for Plaintiff on April 26, 2010, alleging that Plaintiff had violated his probation when in fact the probation had expired prior to Plaintiff's release [on] April 21, 2010, and that no such probation violation report was made prior to the expiration of the probation period which said report would have had to have been filed with the clerk's office prior to the expiration of the probation. Plaintiff was eventually arrested and held in custody establishing again another false imprisonment. The resident judge dismissed the alleged violation explaining that the probation officer had no jurisdiction over Plaintiff since no such report was filed prior to the expiration of the probation.

(Doc. No. 1-2 at ¶ 11).

Defendant Broadway was Plaintiff's probation officer until July 2009. According to his own allegations, Plaintiff was incarcerated for the last six months of Broadway's supervision of him, on charges she did not cause to be brought. See (Doc. Nos. 1-1 at ¶¶ 2-4; 1-2 at ¶¶ 1-9). Having been incarcerated on charges he admits Broadway did not bring, Plaintiff remained incarcerated until long after Broadway had ceased to supervise his case in July 2009. Thus, neither the initiation of his incarceration nor the length of it can be attributed to any action of Broadway's.

Defendant Rudgers took over supervision of Plaintiff's case in July 2009. Rudgers states in his Declaration that he did cause probation violations to be brought against Plaintiff in April 2010 that resulted in Plaintiff's arrest in June of that same year. (Doc. No. 97-2 at ¶¶ 12-13: Affidavit of Andrew J. Rudgers). Rudgers asserts, however, that he initiated probation violation procedures in reliance on his professional belief, reinforced by information received from the computerized probation tracking system, that Plaintiff's probation had been tolled during the period of his incarceration on new Mecklenburg County charges from March 23, 2009, to April 16, 2010, thus

-3-

extending Plaintiff's probation until February 2012.  (Id. at ¶ 8).  The Superior Court judge eventually ruled that Plaintiff's probation was not tolled during his period of incarceration and, thus, his probation had expired by the time Rudgers brought charges against him in late April 2010.  (Doc. Nos. 1-2 at ¶ 11; 97-2 at ¶ 14).  As soon as the judge so ruled, Rudgers immediately obtained an order terminating Plaintiff's probation and filed the order with the clerk of court.  (Doc. No. 97-2 at ¶ 15).

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a).  The rule goes on to provide procedures for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56).

## III.  DISCUSSION

First, as to Defendant Broadway, Plaintiff alleges that Broadway "caused [him] to be detained and held on numerous secured bonds resulting in false imprisonment by falsely accusing [him] of [] probation violations," (Doc. No. 1-1 at 2), but he does not specify when she allegedly did so, what probation violations she allegedly instituted, or how she caused him to be detained and held. Furthermore, for the incarceration relevant to this case—from December 31, 2008, to April 21, 2010--Plaintiff explicitly attributes his arrest and detention to the actions of Henderson and Gilchrist, not Broadway. Moreover, and again by his own admission, Plaintiff's incarceration

extended long past the date in July 2009 when Broadway ceased to supervise him. Thus, Broadway cannot be found liable either for his initial detention or his continued incarceration thereafter. In sum, Plaintiff's complaint is insufficient to state a claim against Broadway, as he provides no facts as to any false charges allegedly brought by Broadway. Moreover, in his brief in response to Defendants' summary judgment motion, Plaintiff does not even attempt to refute Defendant Broadway's argument in support of summary judgment. In fact, he does not mention Broadway at all in his response brief. Because Plaintiff has failed to present evidence of any cognizable claim against Defendant Broadway, she is entitled to summary judgment.

Next, as to Defendant Rudgers, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether an official is entitled to qualified immunity, the court applies a two-pronged test. First, the court must decide whether the facts plaintiff alleged make out a violation of a constitutional right. Second, the court must decide if the right at issue was clearly established at the time of the alleged violation. Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Unless the official's conduct violated a clearly established right, the official is entitled to qualified immunity. Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). If a government officer objectively reasonably believed that his actions were lawful at the time of the challenged act, then the officer is entitled to qualified immunity. Anderson, 483 U.S. at 638. Reasonable mistakes are not actionable, because if they were, "difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991).

Here, it is undisputed that Plaintiff's allegations against Rudgers arise out of Rudgers' performance of his official duties. Rudgers states in his Declaration that he believed that his actions were lawful at the time he undertook them. That is, he believed that the relevant probationary period was tolled by Plaintiff's incarceration, and this belief was supported by the Department of Public Safety's computer system, which automatically extended Plaintiff's probationary period when Rudgers updated it to reflect Plaintiff's release from incarceration. (Doc. No. 97-2 at ¶¶ 5-8). Rudgers' actions were consistent with his duties as a probation officer faced with an apparent probation violation and, at most, Plaintiff has shown that Rudgers simply made a mistake in charging Plaintiff with a probation violation. Moreover, Plaintiff's conclusory contention that Rudgers was acting out of bad faith is not enough to withstand summary judgment. In sum, Rudgers is entitled to qualified immunity, and the Court will therefore grant his summary judgment motion.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 96), is **GRANTED**;
2. Plaintiff's Motions to Compel, (Doc. Nos. 84; 86), and his Motion for Hearing, (Doc. No. 91), are **DENIED** as moot.
3. As all Defendants have now been dismissed from this action, the Clerk is instructed to terminate this case.

Signed: August 19, 2013

Robert J. Conrad, Jr.
United States District Judge